## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa Woodward and<br>Peter Woodward, | Civil Action No. 0:23-CV-00632-KMM-ECW |
|        Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE IN OPPOSITION TO ATTORNEY KEVIN GIEBEL'S MOTION FOR AWARD OF FEES AND COSTS** |
| Credit Service International Corporation,<br>Richard Muske, Attorney at Law, | |
|        Defendants. | |

## Introduction

The law empowers the judiciary to trust their own experience and senses—much like natural scientists do in observing and categorizing fauna, flora, and even fowl—in deciding an appropriate fee award pursuant to statutory authority. Employing their own empirical experience, a zoologist would tell you that if a creature looks like a duck; walks like a duck; and quacks like a duck, you are dealing with a duck.

An objective and reasonable assessment of this run-of-the-mill Fair Debt Collection Practices Act (the "FDCPA") case confirms it is indeed a common and unremarkable "duck" (or even a "duckling" given the nascent stage of litigation at which this matter resolved). There is nothing special or exceptional about it.

The procedural posture is short: a complaint served; the matter removed to this Court, an answer interposed by defendants; a Rule 68 offer of judgment served, and then accepted two days later. To be sure, this case did not involve "complex" claims. Indeed,

no motion practice, written discovery, or depositions were needed for it to resolve (as far as plaintiffs were concerned).

Yet, on this fee petition plaintiffs' counsel attempts to transform a common mallard into a nearly **$29,000** golden goose, despite the prompt resolution of this matter for the statutory value of plaintiffs' proffered claims. This is unreasonable and excessive.

Indeed, a court in the Eastern District of New York recently provided the following commentary germane to this problem (in the context of Article III standing):

> And no one should fool themselves into thinking that when it comes time to settle these cases (virtually all of them are either dismissed on motion or settle), there is any real discussion about compensating a plaintiff for an injury he has suffered. "Judicial experience and common sense," *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, tell us that the settlements in these cases are about mitigating defense costs and the prospect of plaintiffs' counsel receiving an attorneys' fee. No doubt, plaintiffs who bring these cases receive some compensation for having lent their name to the endeavor, but there is no reason to conclude it is anything but nominal. That is why plaintiffs' counsel, in this case and others, is not apprehensive about abstaining from the issue of whether there is an injury-in-fact, despite the potential overlap between that issue and a lack of damages. They are just as happy to be in state court and avoid the Article III motion practice. They know that when it comes down to resolving these cases, an inability to show damages is not what the settlement discussion is going to be about.

*Friedman v. Cavalry Portfolio Servs., LLC*, ___ F. Supp.3d___, Nos. 23-cv-0304, 23-cv-3212, 2023 WL 3708996, at *4 (E.D.N.Y. May 30, 2023).

Other courts have observed, more bluntly:

> The FDCPA was not passed in order to sprout a cottage industry for lawyers who self-interestedly battle over attorney's fees in federal court. *See, e.g., Lee v. Thomas & Thomas,* 109 F.3d 302, 306–07 (6th Cir. 1997) ("Counsel should not wish to reap financial rewards for prolonging

litigation unnecessarily."). And, in this Court's view, judicial economy is an appropriate consideration in addressing these repetitive, relatively minor fee disputes, especially as FDCPA filings rise and resources shrink. It is against this backdrop that the current fee dispute is decided.

*Cohen v. American Credit Bureau, Inc.*, No. 10-cv-5112, 2012 WL 847429, at *2 (D.N.J. Mar. 13, 2012) (internal footnote omitted).

The *Cohen* court's observation regarding judicial economy is consonant with Eighth Circuit precedent controlling the assessment of fee petitions like this one—namely the instruction that "[a] district court need not, and indeed should not, scrutinize each billing entry of an attorney seeking a fees award, because the essential goal in shifting fees (to either party) is to do rough justice, not achieve auditing perfection." *Ricketson v. Advantage Collection Professionals, LLC*, No. 21-cv-2541, 2023 WL 2529211, at *5 (D. Minn. Mar. 15, 2023) (internal quotation marks omitted, cleaned up, and citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Here, rough justice under the circumstances is an award of **$6,000**[1] in attorneys' fees, plus $164.00 in costs.[2] The Court need not engage in a line-by-line audit of plaintiffs' counsel's fee records to reach this result. Instead, this award is appropriate on the following bases:

---

[1] This is the amount defendants offered attorney Giebel prior to this motion. For all of the reasons set forth herein, it should have been (but was not) accepted so we all could have avoided the time and resources wasted on this motion.

[2] Defendants do not challenge the cost request.

- Plaintiffs' counsel's demanded hourly rate of $450 is not supported by the record. An appropriate hourly rate is $350 in the Twin Cities market given the simple claims, the short life of this case, and plaintiffs' counsel's relative experience.

- Plaintiffs' counsel improperly seeks fees that predate this litigation (and are not awardable pursuant to the plain terms of defendants' Rule 68 offer). A substantial reduction of claimed hours is warranted in that regard.

- Plaintiffs' counsel appears to have "laid in the weeds" during the underlying collection lawsuit—without taking any action on his clients' behalf to prevent the very conduct of which plaintiffs complain in this action. In short, plaintiffs' counsel appears to have set up the "wrongful garnishment" claim in this case by his own inaction.

- Plaintiffs' counsel's unfortunate chosen settlement strategy unnecessarily prolonged this litigation and engendered the present motion, which could have been avoided by reasonable settlement efforts following plaintiffs' acceptance of the Rule 68 offer.

- Plaintiffs' counsel attempts to bill defendants for time spent on non-compensable tasks, including premature litigation efforts and administrative tasks.

For these reasons, as discussed in greater depth herein, defendants Credit Service International Corp. ("CSIC") and attorney Richard Muske respectfully request the Court award plaintiffs' counsel $164.00 in costs and **$6,000** in fees.

4

## Relevant Background

### I.   The Separately Captioned (and Separately Resolved) Collection Action

In May of 2016, Lisa and Peter Woodward (plaintiffs in this matter) incurred a financial obligation to Southill Dental Group ("Southill"). [Plaintiffs' Compl., ¶ 11.] In May of 2017, Southill placed the Woodwards' unpaid financial obligation with CSIC for collection. [*Id.* at ¶ 13.]

CSIC commenced suit against the Woodwards on the unpaid Southill account in the Washington County Minnesota District Court, assigned court file number 82-CO-22-137 (the "Collection Action"). [Declaration of Richard Muske, Ex. A.] The Woodwards failed to appear at the June 9, 2022, trial of that matter. [Plaintiffs' Compl., ¶ 20.] As a result, the conciliation court entered judgment in favor of CSIC. [*See id.* at ¶ 30.]

Attorney Muske was retained on or about July 12, 2022, to transcribe the Collection Action judgment in district court (using the correct address information for the Woodwards), which he did under court file number 82-CV-22-3117. [Muske Dec. ¶ 3.] On August 25, 2022, attorney Muske sent plaintiffs a Garnishment Exemption Notice and Claim Form in preparation to serve an earnings garnishment upon Lisa Woodward's employer. [Muske Dec. ¶ 4, Ex. B.]

### II.   Plaintiffs Retain Kevin Giebel, Who Lies In Wait

Plaintiffs retained attorney Kevin Giebel on August 30, 2022, presumably in response to attorney Muske's August 25 letter. [Doc. No. 20-1 at p. 16.] Attorney Giebel

held subsequent meetings with plaintiffs on September 1 and September 15. [*Id.* at p. 15.]

It is evident from attorney Giebel's billing entries that he was already preparing to tee up a FDCPA claim by his first client follow-up meeting (which predated attorney Muske's service of the wage garnishment upon Lisa Woodward's employer):

| 09-01-22 | KEG | T/C Client(s), Email to/from client, Complete review of case Docket, download and copy docket, Client Judgment search, Investigate case details (for FDCPA, too), including address issue, Service of Process issues; Diary 10 days | 3.00 |

[*Id.*[3]]

Yet, despite attorney Muske's clear statement of intent to garnish Lisa Woodward's wages, and attorney Giebel's subsequent meetings with plaintiffs, attorney Giebel took no efforts to contact attorney Muske to discuss the underlying judgment in the Collection Action or to avoid the wage garnishment before the garnishment was ultimately served upon Lisa Woodward's employer on September 21, 2022. [Muske Dec. ¶¶ 5-6, Ex. C.]

Instead, attorney Giebel waited until the garnishment was served and <u>then</u> contacted attorney Muske and Lisa Woodward's employer. [Doc. No. 20-1 at p. 15; Muske Dec. ¶

---

[3] In his supporting declaration, attorney Giebel avers: "all of the time incurred prior to service of the Complaint in this Action was absolutely part of the resulting Action and necessary, and indeed critical; beginning back in August 2022. It was at that early stage that the FDCPA and Garnishment matters were diligently investigated, defended, and the Judgment negotiated. It was also on account of these early efforts that support for the affirmative FDCPA and Garnishment claims was gathered, evaluated, the claims established factually and legally, and ultimately perfected into specifically pled actionable claims." [Doc. No. 20 at p. 11, ¶ 45.]

6.] This smacks of a set up.[4]

### III.   CSIC And Attorney Muske Resolve The Collection Action By Vacation And Voluntary Dismissal

Upon learning of the alleged issues with service of process in the Collection Action from attorney Giebel, CSIC and attorney Muske took no further collection action and instead agreed to vacate the judgment and dismiss the case with prejudice. [Muske Dec. ¶ 7.] The district court did just that on November 4, 2022. [Muske Dec. Ex. A.]

No good deed going unpunished, attorney Giebel saw this as an opportune time to pull tight the snare, noting his thought that "now may be a good for us to informally discuss compensating the Woodwards for that they were forced to go through." [Muske Dec. Ex. D.]

### IV.   Attorney Giebel Commences This Action By Service In State Court

On December 7, 2022, attorney Giebel sent a draft Complaint to Muske. [*Id.*] Therein, attorney Giebel alleged that CSIC and Muske unlawfully attempted to collect on a judgment against plaintiffs when a valid judgment did not exist, **including a claim that attorney Muske's service of the aforementioned garnishment summons was improper, despite attorney Giebel's complete and total failure to take any action to intervene in that process on his client's behalf prior to service**. [*Id.*]

Attorney Giebel attempted to tether the alleged conduct of CSIC and attorney

---

[4] *See supra* note 3.

Muske to claims under the FDCPA and the Minnesota Collection Agency Statute, codified at Minnesota Statutes section 322.37 *et seq.* [*Id.*]

Though attorney Giebel invited "factual correction recommendations" to the draft complaint, attorney Muske wisely remained silent in light of attorney Giebel's demonstrated efforts to turn attorney Muske's good-faith efforts against him in litigation (and for attorney Giebel's own benefit).

On December 12, 2022, counsel for CSIC and attorney Muske reached out to attorney Giebel with concerns about the draft complaint, including the black-letter fact that the Minnesota Collection Agencies statute provides no private right of action. [Declaration of Patrick D. Newman, Ex. A.] Counsel for CSIC and attorney Muske exchanged further correspondence with attorney Giebel outlining why plaintiffs' proffered claims lacked merit. [*Id.*]

Notwithstanding, attorney Giebel commenced suit against CSIC and attorney Muske in the Washington County district court by service of the summons and complaint[5] in February 2023. [Doc. No. 1.]

---

[5] This version of the complaint correctly removed any reference to the Minnesota Collection Agencies Act, replacing that purported cause of action with a claim pursuant to the Wrongful Garnishment Act (again, predicated on events that attorney Giebel took no efforts to stop ahead of time, despite being retained by plaintiffs in the Collection Action and with prior notice of the intent to serve a wage garnishment). [*See* Doc. No. 1.]

## V.      The Short-Lived Pendency Of The Lawsuit In This Court

On March 15, 2023, CSIC and attorney Muske removed the case to this Court. [Doc.

No. 1.] On March 31, 2023, CSIC and attorney Muske answered the complaint. [Doc. Nos.

6-7.] Despite no pretrial order having been issued, attorney Giebel immediately demanded

dates for a Rule 26(f) meeting the very same day. [Newman Dec. Ex. C.] Attorney Giebel's

time records show that he purports to have billed for the following tasks the very next day

(again, despite the absence of a Rule 16 order):

| 04-01-23 | KEG | T/C clients, emails to/from clients, Draft Interrogatories, RFP, And Admissions (2 sets) prepare for 26(f) conference, Draft Notices of Deposition, populate 26(f) Court Form; diary a week | 3.50 |
| --- | --- | --- | --- |

[Doc. No. 20-1 at p. 6.]

On April 11, 2023, defendants served plaintiffs, through attorney Giebel, a Rule 68

offer of judgment as a means to bring this matter to a swift conclusion in light of the

FDCPA's fee-shifting provision. [Doc. No. 9.]

The offer provided, in relevant part:

> 1.       Judgment shall be entered in the total amount of Two Thousand and Two and
> no/100 Dollars ($2,002.00) in favor of Plaintiffs Lisa and Peter Woodward, collectively,
> as against the above-named Defendants Credit Service International Corporation and
> Richard Muske, to resolve all claims asserted by Plaintiffs Lisa and Peter Woodward
> against Defendants Credit Service International Corporation and Richard Muske in this
> action, as well as any claims that could have been raised against Defendants Credit Service
> International Corporation and Richard Muske in this action;

[*Id.*]

Critically, defendants' offer further (1) denied any liability to plaintiffs; (2) limited any award of <u>reasonable</u> attorneys' fees costs to the <u>instant action</u>; and (3) disclaimed any damages to plaintiffs. [*Id.* ("In addition, Plaintiffs Lisa and Peter Woodward's reasonable attorneys' fees and costs in connection with Plaintiffs Lisa and Peter Woodward's claims against Defendants Credit Services International Corporation and Richard Muske **in the above referenced suit** are to be added to said judgment[.]") (emphasis added).]

Two days later, on April 13, 2023, plaintiffs accepted the Rule 68 offer of judgment. [Newman Decl., Ex. D.].

## VI.  Attorney Giebel Chooses Unreasonable And Unhelpful Negotiation Tactics, Both Before And After Plaintiffs Accepted Defendants' Rule 68 Offer

On January 25, 2023 (prior to defendants' service of the Rule 68 offer), attorney Giebel issued the following settlement demand:

> Lastly, we firmly believe we have a number of violations to pursue against CSIC and attorney Muske, and that their refusal to provide this information despite our numerous demands only confirms that. The Woodwards are therefore willing to make a settlement demand in an effort to fully and finally resolve this matter. Accordingly, Lisa and Peter Woodward are willing to accept the sum of Ten Thousand and No/100 Dollars ($10,000.00) in full and final resolution of this matter. This would be informally allocated at $5,000.00 each for Lisa and Peter Woodward's claims. ***This offer shall remain open and valid for the same deadline period demanded for the document and information disclosure – Wednesday, February 01, 2023, by 4:30PM CDT. If the offer is not accepted on or before that date and time the offer shall automatically expire, become void and be rescinded, without further notice.***

[Newman Dec. Ex. B.]

Notwithstanding the arbitrary and unnecessary nature of attorney Giebel's stated deadline, CSIC and attorney Muske's counsel responded on February 1:

| From: | Patrick D. Newman |
| Sent: | Wednesday, February 1, 2023 2:17 PM |
| To: | Kevin Giebel |
| Cc: | Patrick D. Newman |
| Subject: | RE: [EXTERNAL] RE: Lisa and Peter Woodward -- CSIC and Attorney Richard Muske |

Mr. Giebel, good afternoon,

Cutting directly to the chase, we disagree with your legal assessment in this matter. CSIC and attorney Muske comported themselves in compliance with the law with respect to the Woodwards. Accordingly, the demand set forth in the January 25th letter is respectfully rejected.

CSIC and attorney Muske do, however, have interest in avoiding protracted litigation in this matter. To that end, CSIC and attorney Muske will agree to pay $1,500, "all in," to the Woodwards—i.e., a single payment of $1,500 to the Woodwards collectively, inclusive of all demands for fees, costs, and any other "damages" or other monetary amounts—in exchange for the Woodwards' complete release of any and all claims as against CSIC and attorney Muske, including, but not limited to, the claims set forth in the "draft" complaint, from the beginning of time through the effective date of the release. The agreement and release memorializing these terms will further include a confidentiality provision as well as CSIC and attorney Muske's denial of liability.

If this gets us resolved, please advise and we will circulate a draft agreement and release for your consideration.

Sincerely,



**PATRICK D. NEWMAN**
He | him | his
SHAREHOLDER
Licensed in MN and WI
pnewman@bassford.com

[Newman Dec. Ex. C.]

Rather than respond to this counteroffer, attorney Giebel commenced this action by service in Washington County Minnesota District Court. [Doc. No. 1.] On February 21, counsel for CSIC and attorney Muske inquired about the lack of response to the counteroffer. [Newman Dec. Ex. C.] Attorney Giebel offered this:

Regarding Defendants' settlement offer, my clients felt that the offer was so out of their settlement range that they simply decided to proceed. Quite frankly, they were also very disappointed with your clients' non-response to their numerous information requests, and believe there is a lot yet to learn about this matter from discovery. Even so, they would still prefer to avoid further litigation (as I would with Mr. Muske's involvement). They were therefore willing to resolve this matter at $10,000 fully and finally, which we strongly believe was more than reasonable under the circumstances. Unfortunately, that time has technically passed; Lisa and Peter have now incurred substantially more attorney fees and some costs since the offer terminated/was formally rejected.

If your clients wish to make a more substantive offer, I will obviously submit to my clients, but our starting settlement range is now in the $12,000 - $13,000 range. Let me know if you want to communicate further about settlement.

Thanks --

**GIEBEL & ASSOCIATES, LLC**
*s/ Kevin E. Giebel*
*Kevin E. Giebel*
*Attorney at Law*

[*Id.*]

At this point it became clear that settlement negotiations would not proceed down a reasonable or rational path. Concerns about attorney Giebel's apparent view that "the-demand-will-only-go-up" pursuant to the FDCPA's fee-shifting provision animated defendants' decision to serve a Rule 68 offer.

On April 13, attorney Giebel conveyed plaintiffs' acceptance of Defendant's Rule 68 offer, along with the following monetary demands:

With respect to the other details of the Rule 65 Offer:

Costs: The Woodwards have currently incurred $107.00 (Service fee and copies) in recoverable costs.

Attorney Fees: the Woodwards will accept the sum of $20,000.00 in resolution of their attorney fees in this matter. In this regard, it is relevant to point out that the attorney representation spans three separate but closely related court file matters, two separate plaintiffs and even some custom Plaintiff claims. We believe this amount to be more than fair under the circumstances of these cases, the services performed, the results obtained in all of the litigations, and the benefit to Defendants of not having to suffer formal Judgments and defend a fee petition where the fees will undoubtedly go up for all parties (in a fairly recent fee petition Minnesota District Judge Susan Nelson approved my fees at $575/hour in an action of similar complexity and that involved a similar federal statutory claim).

[Newman Dec. Ex. D.]

Attorney Giebel's April 13 demand further included the following non-monetary demands as well:

12

Other contingent terms:

1. Payment of the $2,002.00 shall be made payable to the Order of Lisa Woodward as Payee on behalf of herself and her husband, Peter, jointly;
2. Payment of the $20,107.00 in attorney fees and costs shall be made payable solely to the Order of Giebel & Associates, LLC;
3. Both checks shall be issued via Basford Remele firm checks; and
4. Both checks shall be delivered via courier to Giebel & Associates, LLC, care of Kevin E. Giebel, Attorney at Law, 2299 Oriole Avenue North, Stillwater, Minnesota 55082, no later than seven (7) days after execution of the Settlement and Release Agreement by the Woodwards.

Further, Defendants shall be responsible for drafting and presenting to Plaintiffs for review the Settlement and Release Agreement, Stipulation and Order for Dismissal with Prejudice and any other documents, or to take other steps, necessary to effectuate and formalize the Settlement, Entry of Judgment and/or Dismissal of the action.

[*Id.*]

Continuing a now-established pattern of unreasonable tactics, attorney Giebel's demands were accompanied by yet another arbitrary deadline (on a take-it-or-leave-it basis no less):

The above offer of attorney fees and costs as noted above shall automatically expire and be rescinded if not fully accepted by 4:30 PM Central Time on Thursday, April 20, 2023.

After that time, if the Attorney Fee and Costs offers are not fully accepted, we will proceed to entry of judgment and present an Attorney Fee and Costs Petition to the Court.

[*Id.*]

In response, defendants' counsel requested copies of attorney Giebel's time records supporting his demand. [*Id.*] He refused:

13

**Confidential Settlement Communications**
Not Admissible Evidence

Mr. Newman:

Thanks for your prompt response.

It is Plaintiffs' position that such records are irrelevant to our negotiations under the terms of the Rule 65 Offer and the FDCPA, at this time. If we are required to pursue a Fee Petition with the Court for our fees, we will certainly provide the detailed accounting of the time for the Court's consideration of what fees, and at what hourly rate, are reasonable under the relevant caselaw on the subject. We think the figure presented is more than reasonable for an attorney with over 37 years of experience, and as additionally stated in my below email.

Also, given the issues we have encountered in trying to obtain documents we have demanded from the Defendants in this matter, and the Defendants' choice to serve the Rule 65 Offer of Judgment prior to any discovery in these actions, we are respectfully declining voluntarily producing the information you seek for that reason as well, again, at this time.

Feel free to contact me with any further questions.

Regards,

**GIEBEL & ASSOCIATES, LLC**
*/s/ Kevin E. Giebel*
*Kevin E. Giebel*
*Attorney at Law*
651.236.0729
kgiebel@ggwklaw.com

[*Id.*]

Of course, attorney Giebel's fee records became immediately relevant upon plaintiffs' acceptance of the Rule 68 offer. Indeed, courts in this district have admonished counsel for the vexatious practice of refusing to provide time records under these circumstances. *See Ricketson v. Advantage Collection Professionals, LLC*, No. 21-cv-2541, 2023 WL 2529211 (D. Minn. Mar. 15, 2023); *Olson v. Messerli & Kramer, P.A.*, 07-cv-0439, 2008 WL 1699605, at *3 (D. Minn. Apr. 9, 2008).

Defendants' counsel provided attorney Giebel with authority on this point, after which he finally produced his time records. [Newman Dec. Ex. E.] Attorney Giebel then made an "updated" demand of $20,108.00, as his previous demand had been "off" by one

14

dollar. [*Id.*]

On April 24, 2023, attorney Giebel relayed the following to defendants' counsel:

Mr. Newman:

Permit me to confirm at this time that Defendants have not responded in any regard in accord with Plaintiffs' deadline provided below, and any and all offers of resolution of the attorney fee and costs issue have therefore been rescinded and canceled.

Plaintiffs also wish to confirm that at no time since Defendants' service of the Rule 68 Offer of Judgment have the Defendants made any settlement offers to Plaintiffs relating to attorney fees or costs. In fact, Defendants have not responded at all since April 13, 2023. As you requested, Plaintiffs provided Defendants their detailed attorney fees and costs records. See attached another courtesy copy of those records.

Lastly, it was recently discovered that the "preliminary" hourly rate under the Plaintiffs' written Retainer Agreement is actually $450.00 per hour rather than $425.00 per hour on the attached. Also, the Metro Legal Service Fee was $111.00, not $65.00. Please advise if these corrections have any effect on Defendants' position in this matter.

Unless we hear otherwise from you, we will proceed to the next step.

Feel free to contact me with any questions.

**GIEBEL & ASSOCIATES, LLC**
*/s/ Kevin E. Giebel*
*Kevin E. Giebel*
*Attorney at Law*
651.236.0729
kgiebel@ggwklaw.com

[*Id.*]

Noting that, despite their acceptance of the Rule 68 offer, plaintiffs had failed to inform the Court of the same, defendants' counsel drafted and proposed a notice of acceptance to attorney Giebel on May 4, which was filed the same day. [Newman Dec. ¶ 6, Ex. F; Doc. No. 9.]

Later, on May 4, defendants offered attorney Giebel $6,000 as <u>reasonable</u> fees and costs incurred in this matter, supported by a sound and reasoned basis for that sum. [Newman Dec. Ex. G.] Attorney Giebel responded the same day:

In the meantime, this email shall confirm that any and all earlier attorney fee and costs offers made by Plaintiffs to the Defendants have been rescinded and terminated, specifically including the now void $20,000.00 attorney fee offer. Plaintiffs are now willing to accept from your clients the sum of $21,915.00 in attorney fees (calculated at the correct $450.00 per hour), and $154.00 in costs (including the correct Metro Legal Service Fee), for a full and final total attorney fee and costs settlement amount of $22,069.00. The "other contingent terms" noted in our April 13, 2023 email shall apply to and be contained in the offer as well. Note that Plaintiffs shall not be bound by any deadlines relating to this offer; this offer may be rescinded and/or terminated at any time, effective on the date and at the time reflected in an any email sent to you by this writer, to that effect.

Be further advised that we expect another approximate $5,000.00 - $7,000.00 will be incurred in further April and May attorney fee time, and attorney fees incurred in the scheduling, preparation, briefing and arguments of the Fee Petition.

Please advise at your earliest convenience; we look forward to hear from you.

Regards,

**GIEBEL & ASSOCIATES, LLC**
*/s/ Kevin E. Giebel*
*Kevin E. Giebel*
*Attorney at Law*
651.236.0729

[*Id.*]

On May 8, attorney Giebel and defendants' counsel held a meet-and-confer phone conference to attempt to find a resolution on the issue of reasonable attorneys' fees. Unfortunately, the parties were unable to reach a resolution on the issue. [Newman Dec. ¶ 8.]

On May 11, attorney Giebel incredibly requested a counteroffer from defendants, despite having never once made a compromise offer of any kind, instead simply increasing his demand at every juncture (and virtually assuring the necessity of the instant motion). [Newman Dec. Ex. H.]

**VII.    Attorney Giebel Files The Instant Motion (In Piecemeal Fashion)**

On May 13, attorney Giebel filed some, but not all, of the documents required for a fee petition. [Doc. Nos. 12-14.] Then, on May 15, attorney Giebel filed a notice of hearing and bill of costs. [Doc. Nos. 15-16.]

On May 24, the Court denied attorney Giebel's petition without prejudice, noting it was "filed without adequate factual support on which the Court could base a determination whether the fees incurred were reasonable." [Doc. No. 18.]

On May 25, attorney Giebel refiled his fee petition, this time with a memorandum and declarations. [Doc. Nos. 19-24.] Oddly, the majority of the supporting memorandum and attorney Giebel's declaration focus on merits issues, which are irrelevant at this stage of the proceedings.[6] In any event, attorney Giebel claimed to be entitled to an award of $28,935.00 in fees and costs in the final version of his fee papers.

---

[6] This is particularly strange since attorney Giebel is not permitted a reply brief. L.R. 54.3(b).

## **Argument**

### I.   **Legal Standard for Fee and Cost Awards**

A consumer who prevails in a FDCPA action may be awarded <u>reasonable</u> costs and attorneys' fees, as determined within the discretion of the district court. 15 U.S.C. § 1692k(a)(3). *see also Zortman v. J.C. Christensen & Assocs., Inc.,* 870 F. Supp. 2d 694, 697 (D. Minn. 2012).

To determine the reasonableness of attorneys' fees, courts utilize the lodestar method. *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–64 (1986). Under the lodestar method, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, which must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The party seeking an award of attorneys' fees bears the burden to establish that they are entitled to an award by providing documentation that addresses the nature of the work, the appropriateness of the hourly rates and the hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

A district court is endowed with substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## II. Plaintiffs' Counsel's Requested Fees Are Unreasonable and Excessive

Attorney Giebel purports to have incurred $28,935 in fees and costs, but offers that he is "willing to reduce the fee award request by ten (10) percent" to equal a total of $26,205.00. [Doc. No. 22, p. 20-21.] Both sums are patently unreasonable.

Specifically, attorney Giebel fails to carry his burden (1) to prove that his requested hourly rate is reasonable or (2) to demonstrate the reasonableness of the claimed number hours.

### A. Plaintiff's Counsel Fails to Meet His Burden to Establish His Requested Rate is Reasonable—the Requested Rate is, in Fact, Excessive

A reasonable rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Heroux v. Callidus Portfolio Mgmt.,* 17-cv-05132(HB), 2019 U.S. Dist. LEXIS 1041, * 7 (D. Minn. Jan. 3, 2019).

"The relevant inquiry is the prevailing market rate in the Twin Cities …." *Olson v. Messerli & Kramer, P.A.*, No. 07-cv-0439, 2008 WL 1699605, at *1 (D. Minn. Apr. 9, 2008) (citing *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (reducing demanded rate of $400 per hour to $300 per hour). The reviewing court may properly draw on its own experience and knowledge about the prevailing market rate. *Heroux,* 2019 U.S. Dist. LEXIS at * 7; *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

Higher rates are justified only for the most skilled attorneys litigating complex cases. *Westlake v. Atl. Recovery Solutions, LLC,* 8:15-cv-1626, 2016 U.S. Dist. LEXIS 7692, * 7

(M.D. Fla. Jan. 22, 2016). Courts in this district repeatedly have ruled that higher rates are *not* justified for cases, like this one, that are not complex and resolve quickly. For example:

- "The Court has reviewed plaintiff's motion and supporting affidavits and AR's response. As AR points out, plaintiff's counsel have not supported their rather high hourly rates with any evidence of prevailing market rates. Instead, they cite complex class-action cases from other jurisdictions, including California and Pennsylvania, in which courts have approved their hourly rates … [t]his case was neither complex nor a class action, and the relevant inquiry is the prevailing market in the Twin Cities, not the rates in other states." *Orsburne v. Assets Recovered, LLC*, No. 07-cv-1710 (D. Minn. Jan. 14, 2008)[7] (citation omitted).

- "Counsel's above-average rates might be reasonable in exceedingly complicated, contentious, and difficult cases, but this case is not one of them." *Kuntz v. Messerli & Kramer P.A.,* No. 16-cv-2676 (JNE/BRT), 2017 WL 3332222 (D. Minn. Aug. 4, 2017).

- "[W]hile Schwiebert has been practicing law for over 20 years, the skill necessary to resolve this matter was minimal, requiring mostly client communication and the submission of a template complaint. There are certainly some FDCPA matters that require a great level of experience and skill, but this matter was not one of them." *Meidal v. Messerli & Kramer, P.A.,* No.18-cv-985 (PAM/BRT), 2018 WL 4489693 (D. Minn. Sept. 19, 2018).

In any event, an attorney's self-serving affidavit will not suffice to carry the evidentiary burden to establish a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 895, n. 11 (1984); *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988) ("Satisfactory evidence at a minimum is more than the affidavit of the

---

[7] Defendants' counsel could not locate a copy of the *Orsburne* order on Westlaw. Therefore, a copy is included in the Declaration of Patrick D. Newman as Exhibit I.

attorney performing the work"); *Orsburne*, No. 07-cv-1710, Jan. 14, 2008, Memo. Op. and Order, at p. 1-2.

This case was far from "complex" and was never really litigated. Accordingly, a reasonable rate is $350 per hour.

### 1.   Counsel Wholly Fails to Establish That His Demanded Rate is in Line with the Prevailing Twin Cities Market

Attorney Giebel attempts to support his demand for a $450 rate solely by reference to his own affidavit, in which he opines that the requested rate is appropriate because it is "comparable to the fees received in Hennepin County, Minnesota for similar professional experience, skill and complexity of the litigation." [Doc. No. 20, ¶ 11.]

But this is insufficient to carry his burden. Even if it were enough, the declaration itself fails to support the demanded rate in any event.

Though attorney Giebel's declaration and CV show he has practiced law for a number of years, the lion's share of that time was spent as "Assistant General Counsel," "General Counsel/Lead Outside General Counsel," a "Senior Corporate Attorney," and "Outside Corporate and General Counsel." [Doc. No. 20-1 a p. 1-2.]

A PACER search for District of Minnesota cases in which attorney Giebel has appeared as counsel reveals the following:

- Between 2007 and 2008, attorney Giebel defended five FDCPA cases lodged against his former law firm, Giebel, Gilbert, Williams & Kohl, PLLP;

- In essentially the same timeframe, attorney Giebel defended another Minnesota law firm in two FDCPA actions;

- In 2017, attorney Giebel represented his daughter in a FDCPA action against a collection agency.

[Newman Dec. ¶¶ 11-12, Ex. J.]

All told, the publicly available docket information for this District shows that attorney Giebel has been involved in less than ten FDCPA actions <u>and</u> that the instant matter is the only one he has handled for a private, non-family-member client in over a decade. [*Id.*] This limited experience in FDCPA litigation does not warrant the high rate demanded.

Nor do the two related Fair Labor Standards Act cases attorney Giebel cites in his declaration, which differ markedly in substance, procedural history, and complexity from the case at bar:

- This is a simple, straightforward FDCPA matter resolved with no real litigation;

- The FLSA cases attorney Giebel evidently participated in involved more than 10 lawyers from across the country representing the named plaintiffs;

- The FLSA cases were prosecuted on a collective basis, whereas the instant action involved two individual plaintiffs;

- The FLSA cases were litigated for over <u>four years</u>, including contested motion practice on class certification and the merits, sanctions, and a request for interlocutory appeal.

[Doc. No. 20, ¶ 11; *see also Harris v. Chipotle Mexican Grill*, No. 13-cv-1719, 2018 WL 617972 (D. Minn. Jan. 29, 2018); *Woodards v. Chipotle Mexican Grill*, No. 14-cv-4181, 2018 WL 617972 (D. Minn. Jan. 29, 2018).]

At bottom, attorney Giebel has not provided the Court with any evidence to show that his demanded rate is consistent with the prevailing market rate in the Twin Cities.[8] Therefore, he has not met his burden to establish his demanded rate is reasonable.

### 2.   An Appropriate Rate is $350

Attorney Giebel's experience, as well as the lack of complexity in this case, support an appropriate hourly rate of $350.

The *Meidal* case bears remarkable similarity to this matter and the court's fee analysis is instructive. There, before any real litigation could take place a collection law firm served—and the plaintiff accepted—a Rule 68 offer of judgment for $1,001 plus reasonable fees and costs. [Newman Dec. Ex. K; 2018 WL 4489693, at *1.]

Like attorney Giebel here, the *Meidal* plaintiff's attorney also initially failed to file a memorandum in support of his fee petition. [Newman Dec. Ex. K.] When he eventually did, the *Meidal* attorney demanded a $400 hourly rate, supported only by his own affidavit and the affidavit of a former co-worker. [2018 WL 4489693, at *2.] The court had none of it:

---

[8] Attorney Giebel alleges that counsel for Defendants charged an hourly rate of $400–425 in another FDCPA matter, as support for his own proffered rate of $450 per hour. [Doc. No. 20, ¶ 49.] This is not only irrelevant, but also inaccurate. The matter cited involved an insurance carrier that was not paying defense counsel a rate of $400–$425 per hour, but instead $295. [Newman Dec. Ex. L, p. 9.] Similar circumstances are present in the case at bar.

First, the time and effort this case required was minimal. Schwiebert achieved a favorable outcome for his client before an answer was even filed. Further, a search of Schwiebert's prior-filed FDCPA cases shows that the Complaint, Motion, Memorandum in Support, and Declaration were all created from pre-existing documents. (See 18-cv-509 (Docket Nos. 1, 13, 15). While Schwiebert changed the factual information in each document, the format and majority of the content remained the same.

Second, while Schwiebert has been practicing law for over 20 years, the skill necessary to resolve this matter was minimal, requiring mostly client communication and the submission of a template complaint. There are certainly some FDCPA matters that require a great level of experience and skill, but this matter was not one of them.

Finally, the evidence Schwiebert presents fails to show that a $400 hourly rate is reasonable in this case. Schwiebert cites several cases placing FDCPA work in the $400 per hour range, but those cases either involved a more experienced attorney or required substantially more litigation than the case at hand. In particular, Schwiebert relies on a state decision finding his $400 per hour rate to be reasonable. Rosario v. Kariel Staging & Décor, Inc., No. 27-cv-16-13140 (Minn. Dist. Ct. Dec. 15, 2017). However, that case, unlike this one, was litigated for well over a year with many more issues handled. Additionally, Schwiebert has failed to provide sufficient supplementary evidence supporting a $400 per hour award in a case like this one, as required under Blum. His own declaration and the declaration of a former co-worker are unpersuasive. The "Burdge Report" (Docket No. 15, Ex. 4) lists the median hourly rate for a consumer lawyer in Minneapolis at $350 per hour, and fails to take into account the simplicity of a case like this one.

Meidal, 2018 WL 4489693, at *2-3 (awarding $300 rate).

Given the simplicity of this case, the nascent stage at which it was resolved, and attorney Giebel's relative inexperience in litigating FDCPA plaintiff's cases, an hourly rate of $350 is warranted.

**B.**     **The Proposed Compensable Hours Are Not Reasonable**

Just as the FDCPA provides that a prevailing consumer may recover "a <u>reasonable</u>

attorney's fee as determined by the court," the Supreme Court held in *Hensley*:

> The district court also should exclude from [the lodestar] calculation hours that were not **reasonably expended**. Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are **excessive**, **redundant**, or **otherwise unnecessary**, just as a lawyer in private practice ethically is obligated to exclude hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important [in a fee-shifting case]. **Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority**.

*Hensley*, 461 U.S. at 434 (bold emphasis added, internal quotation marks omitted, and

citing *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc)); 15 U.S.C. § 1692k(a)(3)

(emphasis added)).

Attorney Giebel's claims to have expended **64.30 hours** on this matter. This demand

so far outstrips the number of hours courts have approved for cases in a similar litigation

posture (i.e., no litigation beyond the pleadings) that it is patently unreasonable without

reference to the myriad other problems presented by his fee claim.

Indeed, a court in this district recently observed:

> In similar FDCPA lawsuits, when the plaintiff has prevailed at the pleading stage based on an accepted Rule 68 offer of judgment or default judgment, judges in this District have approved reasonable attorneys' fees based on an expenditure of 22 hours or fewer. *See, e.g.*, *Nathanson*, 2019 WL 4387960, at *4 (approving as reasonable 16.4 hours expended); *Meidal*, 2018 WL 4489693, at *2 (approving as reasonable 16.3 hours expended); *Goetze v. CRA Collections, Inc.*, No. 15-3169 (MJD/FLN), 2017 WL 5891693, at *4 (D. Minn. Nov. 28, 2017) (approving as reasonable 15.2 hours

expended); *Kuntz v. Messerli & Kramer P.A.*, No. 16-CV-2676 (JNE/BRT), 2017 WL 3332222, at *2 (D. Minn. Aug. 4, 2017) (approving as reasonable 22 hours expended after reducing claimed hours by 70 percent to eliminate excessive time); *Iverson v. Greystone All., LLC*, No. 14-1027 (ADM/HB), 2015 WL 4635840, at *3 (D. Minn. Aug. 4, 2015) (approving as reasonable 20 hours expended).

*Beckler v. Rent Recovery Solutions, LLC*, No. 21-cv-2680, 2022 WL 17689842, at *4 (D. Minn. Dec. 15, 2022), *appeal noticed Jan. 25, 2023*.

But further problems do persist and warrant further reduction of attorney Giebel's fee demand. First, he seeks compensation for over three months of work on a separately captioned and separately resolved matter, which is not recoverable pursuant to the plain terms of the accepted Rule 68 offer.

Second, at no point during the pendency of the Collection Action did attorney Giebel take any efforts to prevent the wage garnishment that formed, in part, the basis of plaintiffs' claim in this Court. That conduct should not be rewarded.

Third, attorney Giebel elected to take unreasonable settlement positions that ultimately delayed resolution of the fee component of the accepted offer of judgment. He should not profit from his failure to engage in good faith settlement efforts.

Fourth, attorney Giebel seeks compensation for premature and administrative tasks that simply are not compensable under a fee-shifting statute like the FDCPA.

      **1.**        **Time Spent on the Separately Captioned and Separately Resolved Collection Action is not Compensable Under the Plain Terms of the Accepted Rule 68 Offer**

The plain language of the accepted offer of judgment confirms that any fee award is limited to fees incurred in the "above referenced suit." [Doc. No. 9.] In other words, the instant matter, *not* the Collection Action.[9]

Attorney Giebel's billing records reflect that he now seeks compensation for 24.2 hours expended in the Collection Action. [Doc. No. 20, Ex. 1, p. 9 – 13.] Because those hours are not compensable under the plain terms of the accepted Rule 68 offer, they should be deducted from any fee award.

      **2.**        **The "Wrongful Garnishment" Claim Bears the "Earmarks of a Setup"**

As discussed above, attorney Giebel was in a position to stop the wage garnishment that plaintiffs alleged in this action to be "wrongful" by a simple phone call or email to attorney Muske. [Doc. No. 1 ¶¶ 31-38.] That he didn't take those steps is incredible given the following specific allegations in plaintiffs' complaint:

---

[9] Even if fees plaintiffs incurred in defense of the Collection Action were somehow compensable notwithstanding this language in the accepted Rule 68 offer (again, they are not), they would be classified as <u>actual damages</u> incurred by plaintiffs in the Collection Action. (*See, e.g., Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127 (D. Minn. 2022). Critically, the accepted Rule 68 offer specifically disclaims any "damages" payable to plaintiffs. [Doc. No. 9.]

35.     Specifically, on September 21, 2022, Defendants served a Garnishment Summons upon Lisa Woodward's employer, thereby engaging in impermissible debt collector contact with a third person, all without the existence of any valid judgment or other legal authority or right to do so.

37.     Said Garnishment created an embarrassing problem for Lisa Woodward at her employment, and was and remains a source of great embarrassment to, and emotional stress upon, the Woodwards.

38.     Plaintiffs ultimately were forced to turn to legal counsel for help, and upon demand of Plaintiffs' Counsel, Defendants agreed on September 28, 2022 to release the Wage Garnishment on Lisa Woodward's employer, and that it was invalid. Unfortunately however, the Garnishment

Summons and attachments were received by Lisa Woodward's employer, and had to be formally tracked down internally and recalled.

[*Id.* at ¶¶ 35, 37-38.]

This course of events runs contrary to the robust body of FDCPA case law confirming that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's [allegedly] fraudulent or harassing behavior." *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015) (internal quotation marks omitted and citing *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir. 2002); *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 939 (9th Cir. 2007)).

Nor do the courts abide this approach to "teeing up" FDCPA claims:

> This case has all the earmarks of a setup. Plaintiff and his lawyer decided they were going to outsmart the collection company and make a little money while at it. But this statute is not a game, and its purpose is not to provide a business opportunity. There are still consumers who are in fact harassed by debt collectors, albeit less often than prior to the statute's enactment. Those genuinely aggrieved parties are entitled to the protection of the statute. It should not be diluted to become a plaything for fast talking plaintiffs and their lawyers.

*Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp.3d 672, 675 (E.D.N.Y. 2015).

In sum, the time attorney Giebel purports to have billed in setting up any aspect of the instant lawsuit premised on the wage garnishment served on Lisa Woodward's employer, or in later prosecuting that aspect of the claim, is not reasonable and, therefore, is non-compensable.

### 3. Claimed Hours Tied to Attorney Giebel's Own Unreasonable Conduct Following Plaintiffs' Acceptance of the Rule 68 Offer and Necessitating the Instant Motion Are Not Compensable

This matter should have resolved shortly after plaintiffs accepted defendants' Rule 68 offer. But it did not—because attorney Giebel decided to adopt an "up-and-up-and-up" approach to the amount of his fee demand in settlement negotiations throughout this case. This chosen strategy was not "reasonable in light of all the particular circumstances of the case … including the amount of time that was reasonably necessary to obtain the relief provided for by Congress for consumers" under the FDCPA. *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp.2d 955, 959 (D. Minn. 2011).

Nor was it pursued in good faith, which itself is a basis upon which the Court may properly deny attorney Giebel compensation for <u>any</u> hours he purports to have billed after

plaintiffs accepted defendant's Rule 68 offer. *See Ricketson v. Advantage Collection Professionals, LLC*, No. 21-cv-2541, 2022 WL 3701442 (D. Minn. Aug. 26, 2022).

Courts have reduced fee awards in FDCPA litigation where, as attorney Giebel did here, the plaintiff's counsel adopts unyielding, uncompromising settlement positions during the litigation. *See Rubenstein v. Nat'l Recovery Agency, Inc.*, No. 11-cv-06680, 2012 WL 1425144 (C.D. Cal. Apr. 25, 2012); *Daley v. A&S Asscos., Inc.*, No. 09-cv-946, 2010 WL 5137834 (D. Or. Dec. 10, 2010).

Perhaps most importantly, attorney Giebel's staunch and unyielding approach to settlement negotiations virtually guaranteed this motion would be necessary. This too warrants denial of attorney Giebel's fee petition. *See Olson v. Messerli & Kramer, P.A.* No. 07-cv-0439, 2008 WL 1699605, at *3 (D. Minn. Apr. 9, 2008) (denial of fees appropriate where "counsel's own unreasonable conduct created the need to file the fee petition.").

Attorney Giebel seeks compensation for 15.6 hours purportedly expended after accepting defendants' offer of judgment (which accounts for nearly 40% of his work on this matter). Those hours should be deducted from any fee award.

### 4. Premature and Administrative Tasks are not Compensable

Courts do not award fees for time spent engaging in premature litigation activity, including discovery. *Maher v. Barton*, 2014 WL 1316936 (E.D. Mo. Apr. 2, 2014); *see also Ferrari v. U.S. Equities Corp.*, 661 Fed. App'x 47, 49 (2d. Cir. 2016) (reducing fee award for time billed on premature summary judgment motion).

Here, attorney Giebel spent 3.5 hours drafting written discovery prior to a discovery conference even being scheduled. That time is not compensable.

Administrative or clerical tasks are not compensable under fee-shifting statutes, either. *See Bell v. Am. Accts. & Advisers, Inc.,* 2018 WL 6718573 (D. Minn. Nov. 15, 2018) (court subtracting clerical and administrative time from billing records); *Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127 (D. Minn. 2022) (subtracting specific percentage from billing records for non-compensable work performing administrative tasks, such as filing a document).

Here, many of attorney Giebel's billing entries include administrative tasks such as "diary one week," "T/C Metro Legal," or "T/C process server." Unfortunately, Mr. Giebel has "block billed" his time, making it nearly impossible to determine how much of his time was spent on administrative tasks. Accordingly, a further percentage reduction is warranted.

## CONCLUSION

A common mallard does not belong in a natural history museum. It does not warrant substantial discussion or consideration. It simply comes and goes without pomp or circumstance. This case should have been the mallard.

Instead, by a series of ill-advised, unreasonable decisions, this case turned into plaintiffs' counsel's pursuit of a golden goose. A wasteful and unfortunate tale, and one that now must come to an end.

Based on the foregoing, defendants CSIC and attorney Richard Muske respectfully request the Court limit any attorneys' fees award to $6,000.

Respectfully submitted,


**BASSFORD REMELE**
*A Professional Association*

Dated: June 8, 2023       By:   */s/ Patrick D. Newman*
                                Patrick D. Newman (MN #395864)
                                Kiralyn J. Locke (MN #403653)
                                100 South Fifth Street, Suite 1500
                                Minneapolis, MN  55402
                                Telephone: (612) 333-3000
                                Facsimile: (612) 333-8829
                                Email: pnewman@bassford.com
                                Email: klocke@bassford.com


4871-8647-6648, v. 5