## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa Woodward and Peter Woodward, | No. 23-cv-632 (KMM/ECW) |
| Plaintiffs, | |
| v. | **ORDER ON PLAINTIFFS'** |
| | **MOTION FOR ATTORNEY** |
| Credit Service International Corporation | **FEES AND COSTS** |
| and Richard Muske, | |
| Defendants. | |

Plaintiffs Lisa and Peter Woodward brought this lawsuit asserting that Defendants Credit Service International Corporation ("CSIC") and attorney Richard Muske violated the Fair Debt Collection Practices Act and Minnesota's statutes governing efforts to garnish a debtor's wages. After the Defendants removed the case to federal court and answered, they made an Offer of Judgment to the Plaintiffs pursuant to Rule 68 of the Federal Rules of Civil Procedure. The Woodwards accepted the offer of judgment in the total amount of $2,002.00 to resolve all claims against CSIC and Mr. Muske. They also agreed that their reasonable attorney's fees and costs would be added to the judgment, and the parties would either agree to the amount of those fees and costs, "or if they are unable to agree, as determined by the Court upon motion. . . ." [Rule 68 Offer ¶ 2, Dkt. 9.] The parties failed to resolve the issue of fees and costs on their own, and the matter is now before the Court on the Plaintiffs' Motion for Attorney Fees and Costs. [Dkt. 19.] For the reasons that follow, the motion is granted in part.

## BACKGROUND

Plaintiffs Lisa Woodward and Peter Woodward allege that in May 2016, they obtained dental care for one of their children at Southhill Dental Group in Stillwater, Minnesota. They incurred an approximately $2,400 debt, and in May 2017, the Dental Group retained CSIC to collect it. Before they incurred the Dental Group debt, the Plaintiffs lived in a Stillwater home located on Pine Street West. But at the time they obtained dental care for their child from the Dental Group, the Plaintiffs were living at an address on Swenson Street in Stillwater. That is the address Ms. Woodward gave to the Dental Group in connection with the service obtained in May 2016.

When the Defendants attempted to collect the debt, they used the Pine Street Address in several court filings. In February 2022, CSIC filed a statement of claim in Washington County conciliation court against the Woodwards. To establish jurisdiction for that action, CSIC alleged that the Woodwards lived at the Pine Street Address, and Defendants allegedly used the Pine Street Address in other court filings in the collection case. The Woodwards allege that Defendants knew or should have known those were false statements when they were filed because documents available to them showed that the Plaintiffs did not, in fact, live at the Pine Street Address. Further, the Plaintiffs allege that Defendants attempted to serve the conciliation court summons and complaint by U.S. Mail at the Pine Street Address, so they never received service of the complaint. According to the Plaintiffs, the regular mail envelopes attempting service were returned to the Defendants as undelivered. And CSIC allegedly violated the FDCPA by seeking a judgment for $589.41 more than the debt reported to CSIC by the Dental Group.

Despite knowing that they had used the wrong address and had not properly served their papers, the Defendants allegedly moved forward with having the Pine Street Address entered in the conciliation court record so that the matter was scheduled for a hearing and a judgment could be obtained. The Plaintiffs alleged that throughout the conciliation court proceeding, the Defendants had information available to them showing that the Woodwards were living at the Swenson Street Address, but they ignored that information and pursued the action anyway.

Ultimately, the Defendants obtained a judgment in the conciliation court matter, and afterward, they attempted to collect the judgment through garnishment of the Plaintiffs' wages. In late August 2022, Mr. Muske, acting as a debt collector and counsel for CSIC, sent the Woodwards two notices of intent to garnish their wages. Because the Plaintiffs had not received service of the conciliation court filings at the Swenson Street Address, this was allegedly the first time they were ever made aware of the conciliation court action and the judgment. Concerned about the garnishment notices, the Woodwards sought legal representation and hired Plaintiffs' counsel, Kevin Giebel.

On September 21, 2022, around a month after he mailed the notice of intent to garnish, and not having heard from the Plaintiffs or Mr. Giebel, Mr. Muske sent a garnishment summons to Lisa Woodward's employer. In doing so, the Defendants allegedly provided her employer with an inaccurate total ($2,920.81) as the unpaid amount that was subject to garnishment. Thereafter, Mr. Giebel contacted Mr. Muske. As a result of their conversations, Mr. Muske agreed to withdraw the garnishment summons and stipulated to having the conciliation court void the conciliation court judgment

against the Woodwards and having it declared void *ab initio*, as though the judgment had never been entered.

In February 2023, the Plaintiffs initiated their state court proceeding alleging violations of the FDCPA and Minnesota's garnishment statutes. Defendants eventually removed the case to the District of Minnesota on March 15, 2023, and filed their answers shortly thereafter. On April 12th, Magistrate Judge Elizabeth Cowan Wright issued an Order for a Rule 16 conference to be held on May 23rd. Shortly thereafter, Mr. Giebel asked defense counsel for dates when they could conduct a Rule 26(f) planning meeting, but he did not receive a response. Before any Rule 26 meeting took place, Defendants served the Plaintiffs with their Rule 68 offer of judgment, and Plaintiffs accepted.

On May 4, 2023, with the permission of Mr. Giebel, defense counsel filed a Notice of Acceptance with Offer of Judgment, and the Rule 16 conference was canceled. As a result, the Clerk of Court entered a judgment in favor of the Plaintiffs in the amount of $2,002.00. [Dkt. 11.] With respect to the issue of attorney's fees, The Offer of Judgment provided the following:

> 2. In addition, Plaintiffs Lisa and Peter Woodward's reasonable attorneys' fees and costs in connection with Plaintiffs Lisa and Peter Woodward's claims against Defendants Credit Service International Corporation and Richard Muske in the above-referenced suit are to be added to said judgment; said attorneys' fees and costs as are agreed to between the parties, or if they are unable to agree, as determined by the Court upon motion and any responses thereto[.]

[Rule 68 Offer ¶ 2.]

## DISCUSSION

Mr. Giebel and defense counsel discussed the issue of fees on several occasions but were unable to resolve their disagreements. The motion now before the Court was filed on May 25, 2023,[1] the Defendants responded on June 8th, the Plaintiffs obtained permission to file a reply, and the matter was fully briefed on June 23, 2023. [Dkt. 19–31.][2] The Plaintiffs seek $164.00 in costs, which Defendants do not dispute, and the Court will award. 15 U.S.C. § 1692k(a)(3) (costs of the action may be awarded in an FDCPA case). However, the parties do not agree on the amount of reasonable attorney's fees that should be awarded.[3] The Plaintiffs request an award of $29,139.00 in attorney's fees. [Dkt. 31 ¶ 31.] The Defendants contend that this request is unreasonably inflated because it is based on (1) an hourly rate that is higher than reasonable for this type of case, and (2) a total number of hours that is unreasonably excessive for a variety of reasons. Having considered the parties' arguments and the entire record in this

---

[1] A motion for fees, meet-and-confer statement, proposed order, and a "bill of costs" were filed on several days between May 13 and May 19, 2023. However, the request for attorney's fees was not supported by any factual submissions, and no memorandum of law was filed, so the Court denied the motion without prejudice and instructed the Plaintiffs to refile the motion. [Dkt. 12–16, 18.]

[2] On July 23, 2023, the Plaintiffs filed a "Satisfaction of Judgment" indicating that the Defendants paid the $2,002.00 judgment to the Woodwards on June 23, 2023. [Dkt. 32.]

[3] Similarly, the Defendants do not argue that fees cannot be recovered in connection with this suit, nor dispute that the Plaintiffs are entitled to an award of some attorney's fees. Accordingly, the Court will not address these issues in detail. *See Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127, 1135 (D. Minn. 2022) (noting that costs and reasonable attorney's fees are recoverable in an FDCPA case).

proceeding, the Court concludes that an award of $12,239.00 in attorney's fees and costs is reasonable under these circumstances.

## I.      Legal Standards

District courts have "broad discretion" in awarding attorney's fees. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). Courts typically begin their analysis of determining a reasonable fee award by using the "lodestar" approach—the number of hours reasonably expended multiplied by a reasonable hourly rate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986), *supplemented,* 483 U.S. 711 (1987); *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018). A dispute over fees generally "should not result in a second major litigation," and district courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When awarding fees, a court should aim to "do rough justice, not to achieve auditing perfection," and may resort to "estimates in calculating and allocating an attorney's time." *Id.*

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). In determining a reasonable hourly rate, district courts are permitted "to rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825. The party seeking fees has the burden to produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002).

In addition to having the burden of showing the reasonableness of the requested rate, the party applying for an award of attorney's fees has the burden of "documenting the appropriate hours expended. . . ." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). Just as courts assess the reasonableness of the claimed hourly rate, they must also "determine whether the hours claimed were reasonably expended." *Harter*, 894 F.3d at 889 (quotations omitted). Courts may rely on their own knowledge and experience in reaching that determination. *Id.*

## II. Analysis

### *Reasonable Hourly Rate*

First, the parties dispute the reasonableness of the claimed hourly rate. Plaintiffs ask the Court to apply an hourly rate of $450 for Mr. Giebel's work on this matter. Mr. Giebel provided a declaration indicating that he has over 37 years of experience as a lawyer, having graduated from law school and gaining admission to the bar in 1984. Over that time, Mr. Giebel has been involved in a wide variety of practice areas, including general corporate representation, real estate, mergers and acquisitions, and litigation. [Dkt. 20 ¶¶ 4–6.] His practice includes "approximately seven years supervising and operating [his] firm's collection law firm practice," and in FDCPA and related state law cases on both the consumer and collections side. [Dkt. 20 ¶ 3.] Defendants argue that Plaintiffs have failed to demonstrate that such a rate is reasonable for a case like this. Mr. Giebel attests that in two cases in this district, he has submitted fee applications

where he was awarded a rate of $575 per hour, and in other instances he has billed as much as $625 per hour. [Dkt. 20 ¶¶ 7, 11.] He also notes that his written retainer agreement with the Woodwards established a preliminary hourly rate of $450 per hour and states that he "believes that $450.00 per hour is a reasonable attorney rate in this Hennepin County locale, and for application in this Action." [Dkt. 20 ¶ 8.] Finally, Mr. Giebel states that a recent decision provided to him by defense counsel indicates that defense counsel began practicing in 2013, several years after Mr. Giebel, and that he typically charges an hourly rate between $400 and $425 in similar FDCPA matters. [Dkt. 20 ¶ 49.]

The Defendants assert that this case does not justify an hourly rate of $450 and that the Plaintiffs' evidence in support of that rate is insufficient to establish that it is appropriate. The Defendants argue that a $350 hourly rate is reasonable under the circumstances because: (1) this case was neither complex, nor was it ever really litigated; (2) Mr. Giebel offered nothing other than his own affidavit and opinions as to the reasonableness of the $450 rate; (3) Mr. Giebel's experience as an attorney in FDCPA litigation is more limited than his declaration implies; and (4) in other cases with a similar lack of complexity, courts have found hourly rates lower than $450 to be reasonable. [Dkt. 25 at 19–24.]

In light of the evidence in the record relevant to this issue, the parties' arguments, and the Court's own experience in resolving similar fee disputes, the Court finds a $350 hourly rate for Mr. Giebel's time performing legal work on this case is reasonable. The Plaintiffs' evidence submitted in support of the requested $450 rate falls short of

satisfying their burden. While the Court does not doubt the veracity of Mr. Giebel's assertions in his declaration, his own declaration does not offer any specific opinion regarding the prevailing market rates in the Twin Cities legal community for comparable cases. Nor do Plaintiffs point to any affidavit from another local practitioner offering any opinion regarding the reasonableness of the requested rate in the Twin Cities for a case like this one. *See Harris v. Chipotle Mexican Grill, Inc*., No. 13-cv-1719 (SRN/SER), 2018 WL 617972, at *6 (D. Minn. Jan. 29, 2018) ("Frequently, when moving for or opposing a fee petition, parties submit affidavits from local practitioners who opine on the reasonableness of attorneys' hourly rates, billing for legal services, and attorneys' standing and reputation in the local legal community.").

Further, the rates allegedly charged by defense counsel in similar FDCPA cases are not particularly persuasive in this case for two reasons. First, although an opposing counsel's fees may occasionally be relevant to determining the reasonableness of the fees sought by an applicant, that is not an ironclad principle. *See Harris*, 2018 WL 617972, at *7 n.5 (finding that the court need not consider defense counsel's fees in assessing the reasonableness of plaintiffs' claimed hourly rates and citing *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000) which noted that the comparison of an opponent's fees can be an "apples-to-oranges comparison" and require additional analysis of the reasonableness of defense counsel's billing). Second, and more importantly, the record here shows that in the case referenced in Mr. Giebel's declaration, although defense counsel Patrick Newman's typical hourly rate was between $400 and $425, he and co-defense counsel charged a discounted rate of $295. [Newman Decl.,

9

Ex. L at 9, Dkt. 27.] The Defendants represent that, as was the situation in that matter, this matter similarly involves an insurance carrier paying a discounted rate. [Dkt. 25 at 23 n.8.]

The Court also finds Mr. Giebel's reliance on the $575 hourly rate he was awarded in other cases does not establish that a $450 hourly rate is reasonable here. In particular, the fact that Mr. Giebel was awarded a $575 rate in a Fair Labor Standards Act ("FLSA") collective action that was heavily litigated —*Harris v. Chipotle Mexican Grill, Inc.*, 2018 WL 617972, at *8 (table of approved rates)—says very little about why such a rate would be reasonable in this relatively simple FDCPA and supplemental state law garnishment case. Although perhaps less complicated in terms of the number of plaintiffs involved, the other case relied on by the Plaintiffs for establishing the reasonableness of Mr. Giebel's claimed $450 hourly rate was also a fairly heavily litigated individual FLSA case. *See Woodards v. Chipotle Mexican Grill, Inc.*, Case No. 14-cv-4181 (SRN/SER), 2015 WL 3447438 (D. Minn. May 28, 2015), which the court handled in tandem with the *Harris* matter. 2018 WL 617972, at *1 n.1. Plaintiffs offer no reasoned argument why the comparison of these cases is relevant to determining the reasonable hourly rate for a case involving a different area of law and fundamentally different circumstances.

Ultimately, the Court determines that a $350 hourly rate is reasonable in this matter. Mr. Giebel is, indeed, a seasoned attorney with a breadth of expertise, and he has shown that his career has involved several years of experience on both sides of collections-related matters. Based on the Court's experience and familiarity with fee disputes in FDCPA cases, rates of $400 per hour and higher have typically been found

appropriate in cases that involve "substantially more litigation than the case at hand." *See Meidal v. Messerli & Kramer, P.A.*, No. 18-cv-985 (PAM/BRT), 2018 WL 4489693, at *2–3 (D. Minn. Sept. 19, 2018) (finding a $300 hourly rate reasonable in a simple FDCPA dispute); *see also Wiley*, 594 F. Supp. 3d at 1147 (approving a $400 hourly rate for work performed in three related cases and $450 for work performed in a fourth).

The Plaintiffs' argument that this case was complex enough to justify a higher hourly rate because it involved "two separate Plaintiffs and two separate Defendants, and multiple claims" is unpersuasive. [Dkt. 22 at 20.] To the contrary, this case involved a bare minimum of litigation and was not particularly complex. In fact, it was a run-of-the-mill dispute that was resolved quickly, and likely could have been resolved even sooner. While there are two parties on each side, the merits of the dispute here were relatively straightforward, and the interests of both defendants and both plaintiffs aligned. Plaintiffs are correct that their complaint was not mere boilerplate or a template pleading, but it was refreshingly simple in comparison to other federal litigation. And the litigation in this Court was minimal: after the Plaintiffs served their complaint, the case was resolved in a few months, there was no commencement of discovery, no litigation over the merits, no depositions, no motion practice, and no court involvement aside from Judge Cowan Wright's notice setting a Rule 16 conference. Therefore, with due consideration of Mr. Giebel's experience, his long career as a practicing attorney, and the specific evidence concerning his experience in collections litigation, the Court finds that a $350 per hour rate is reasonable under the circumstances.

***Reasonableness of Hours Expended***

Next, the parties dispute the reasonableness of the hours expended. The Plaintiffs argue that they should recover attorneys' fees incurred for essentially all work performed by Mr. Giebel relating to this dispute dating back to his earliest involvement in August 2022. Specifically, they argue that "all of the time incurred prior to service of the Complaint in this Action was an absolutely critical part of the Action and necessary to its ultimate success, and indeed crucial to this Action." [Dkt. 22 at 16–17.] Plaintiffs seek an award of fees for hours Mr. Giebel expended in investigating the underlying conciliation court case and negotiating a resolution of that proceeding, arguing that those efforts were instrumental in obtaining excellent results for his clients that are intertwined with this lawsuit. They also argue that Mr. Giebel's billing records establish the reasonableness of the claimed hours in connection with both Mr. Giebel's pre-suit representation and in investigating, preparing, and litigating this case.

Defendants disagree. They take the position that the motion seeks compensation beyond what is reasonable in this case. They argue that recovery of fees claimed in connection with Mr. Giebel's work on the state court conciliation case and the garnishment summons is improper because: (1) Mr. Giebel could have acted sooner to prevent the garnishment summons from ever going out;[4] (2) any fees incurred in the

---

[4] The Court declines to engage in any extended discussion of the Defendants' characterizations of Mr. Giebel's actions as "lying in wait" or constituting a "set up." [*E.g.*, Dkt. 25 at 5–7.] Rather than fan the flames of what appears to be a rather contentious relationship between opposing counsel in this case, the Court will cabin its consideration to whether hours were reasonably expended or otherwise compensable as attorney time.

underlying action would constitute actual damages belonging to the Plaintiffs that are foreclosed by the Rule 68 offer of judgment; and (3) an award of those fees would be contrary to the plain language of the Rule 68 offer, accepted by the Plaintiffs, which limited available fees and costs to those incurred "in the above-referenced suit." In addition, the Defendants argue that, in various ways, Mr. Giebel's billing records show he expended more hours than were reasonably necessary in handling this matter, billed for clerical or administrative tasks, and inflated the hours claimed by failing to engage in reasonable negotiation over the fee dispute both before and after the Rule 68 offer. [*See generally* Dkt. 25.]

As noted, the Plaintiffs seek an award of $29,139.00 in attorney's fees. [Dkt. 31 ¶ 31.] Plaintiffs calculate this amount by multiplying 64.3 hours of attorney time by the $450 requested hourly rate and applying a 10% discount to that total figure ($26,041.00). The additional $3,098.00 the Plaintiffs request is in connection with 8.1 hours incurred after the original motion was filed, multiplied by an hourly rate of $450. The total number of hours reflected in Mr. Giebel's time records is 72.4, which would result in a lodestar figure of $32,580 with no discounts applied. Mr. Giebel asserts that the 10% and 15% reductions he has voluntarily applied sufficiently account for the issues raised by the Defendants. Here, the Court finds that amount to be excessive and, for the reasons stated below, concludes that several categories of hours unreasonably expended should be excluded from the award of fees.

- *Fees Incurred in Underlying Proceeding*

First, the Court concludes that a reduction in the hours claimed is appropriate given the substantial number of hours sought in connection with Mr. Giebel's representation of the Woodwards in response to the Defendants' underlying garnishment efforts and the state court conciliation case. The Plaintiffs cite no authority that such work is recoverable as attorney's fees in a case like this. And the case law indicates that such fees incurred in connection with underlying collections actions are more appropriately categorized as a plaintiff's "actual damages." *Wiley*, 594 F. Supp. 3d at 1137–40 (collecting cases and rejecting several arguments that such fees in underlying collections actions do not constitute "actual damages"). The Rule 68 Offer in this case provided that the judgment in the total amount of $2,002.00 would "resolve all claims asserted by" the Plaintiffs "as well as any claims that could have been raised against Defendants [CSIC] and Richard Muske in this action." [Rule 68 Offer ¶ 1.] Accordingly, allowing recovery of those "actual damages" through the fee petition would deny the Defendants the benefit of the bargain they struck in agreeing to the entry of judgment for $2,002.00.

Moreover, the Court is persuaded that it would not be reasonable to allow recovery of significant fees incurred in connection with the garnishment summons. The record shows that Mr. Giebel was retained weeks before Mr. Muske sent that summons to Ms. Woodward's employer. In fact, he was retained when the Woodwards first received a notice of intent to garnish their wages from Mr. Muske. Mr. Giebel could have reached out to Mr. Muske then to explain why any garnishment would be inappropriate. But he

did not contact Mr. Muske until after Muske, having heard nothing from the Plaintiffs or Mr. Giebel, moved forward with service of the garnishment summons. When Mr. Giebel did contact Mr. Muske, they were quickly able to resolve the garnishment issue: Mr. Muske withdrew the summons and agreed to having the underlying conciliation court judgment voided. This suggests that had Mr. Giebel immediately contacted Mr. Muske, substantial fees incurred by the Plaintiffs in connection with the underlying action would have been unnecessary.

The Court is also persuaded that the language of the Rule 68 Offer in this case contemplates that any award of fees would be cabined to those incurred in connection with *this case*, not those incurred for all of Mr. Giebel's work that is in any way related to the underlying collections efforts of the Defendants. Indeed, the Rule 68 Offer plainly states that the Woodwards' attorney's fees that are to be added to the $2,002.00 judgment are the fees incurred "in connection with [Plaintiffs'] claims . . . *in the above referenced suit*." [Rule 68 Offer ¶ 2 (emphasis added).] The "above referenced suit" that is referenced in the Rule 68 Offer is this action.

Having reviewed Mr. Giebel's billing records, the Court finds that the claimed hours expended should be reduced by 24.2 hours. In particular, the Court has considered the nature of the entries from August 30, 2022, through November 5, 2022, after which the focus of Mr. Giebel's billable work shifted from issues related to the underlying conciliation court matter and the garnishment notices and summons to the investigation and preparation of the complaint in this action. [Giebel Decl., Ex. 2 at 9–13, Dkt. 20-1.] The Court's finding has taken into account the fact that Mr. Giebel's billing records all

contain a heading listing both the underlying cases in Washington County and the "FDCPA matter," and the individual entries do not always plainly delineate whether the tasks being logged relate to the state court and garnishment issues or this action.

- *Block Billing and Administrative Tasks*

Defendants argue that additional reductions are warranted because (1) Mr. Giebel's time entries constitute "block billing," making it a challenge to assess the precise division between compensable and non-compensable attorney time; and (2) the time records reflect that Mr. Giebel is billing for administrative tasks that are not compensable as attorney billable time. The Court has carefully reviewed the records. While the Court agrees that block billing can make it difficult to review the submission, the Court declines to reduce the ordered fees for either of these reasons.

- *Drafting Discovery*

The Defendants also asked the Court to deduct 3.5 hours from Mr. Giebel's billing records for the entry on April 1, 2023, because Mr. Giebel spent time drafting written discovery before a discovery conference had ever been scheduled. They argue that it was premature for Mr. Giebel to have begun such preparation under the circumstances here. The Court finds that no such reduction is warranted under the circumstances.

The April 1st billing entry predates the April 12th Order/Notice of a pretrial conference issued by Judge Cowan Wright. However, it is also true that the Defendants did not serve their Rule 68 Offer on the Plaintiffs until April 11th, so it was by no means clear that discovery would be unnecessary. Indeed, in the communications between counsel leading up to the service of the complaint, the Defendants had, in fact, argued

16

that the Woodwards' claims lacked merit. [*E.g.*, Dkt. 27-1 at 12–13 (1/13/23 letter); *id.* at 31 (2/1/23 email).] At the time Mr. Giebel drafted the discovery, the Defendants had just served answers to the complaint denying liability, Mr. Giebel sought dates for a Rule 26(f) conference, and although not much time passed after he made the initial request, he had not yet heard back from the Defendants. [*Id.* at 44 (3/31/23 letter); Dkt. 6 (Muske Answer); Dkt. 7 (CSIC Answer).]

Mr. Giebel's decision to immediately turn to drafting discovery raises some questions about the necessity of his actions, and it is debatable whether clients required to pay their attorney's hourly fees out of pocket would agree to compensate a lawyer for such discovery work. However, because the Defendants cite no binding precedent requiring the deduction of these hours under such circumstances,[5] and because it was by no means clear at the time Mr. Giebel drafted these initial discovery requests that this litigation would be resolved without any discovery, the Court finds that it was not unreasonable for Mr. Giebel to have expended these hours. Therefore, the Court will not deduct the time entered by Mr. Giebel on April 1, 2023.

- *Settlement Negotiations*

Finally, the Defendants argue that the hours claimed should be substantially reduced because Mr. Giebel engaged in unreasonable settlement negotiations both before

---

[5] The circumstances here distinguish this case from the non-binding precedent cited by the Defendants. *Maher v. Barton*, No. 4:13-cv-2260 (CEJ), 2014 WL 1316936, at *3 (E.D. Mo. Apr. 2, 2014) (deducting two hours for premature discovery when defendants had filed no answer and no case management order had been issued); *Ferrari v. U.S. Equities Corp.*, 661 Fed. App'x 47, 49 (2nd Cir. 2016) (affirming decision not to award fees for preparation of summary judgment motion where motion or judgment on the pleadings had not yet been decided).

and after the Defendants served their Rule 68 Offer. They further contend that Mr. Giebel's settlement strategy was not pursued in good faith, justifying denying an award of fees for any hours he billed after the Plaintiffs accepted the Rule 68 Offer and that his approach to negotiations "virtually guaranteed this motion would be necessary." They argue that a reduction by 15.6 hours billed after the Rule 68 Offer was accepted is, therefore, appropriate. [Dkt. 25 at 29–30.] The Plaintiffs argue that Mr. Giebel's approach to settling this matter both before and after the acceptance of the offer of judgment were conducted in good faith and were reasonable. [Dkt. 30 at 7–9.]

Having carefully reviewed the entire record, the Court concludes that it does not support the exclusion of every hour billed by Mr. Giebel after the Plaintiffs accepted the Rule 68 Offer as the Defendants request. Defendants have not demonstrated that every hour Mr. Giebel spent after his clients' acceptance of the offer of judgment was unreasonable or could not be compensated. For one thing, under the FDCPA, fees incurred after a Rule 68 offer is accepted may be recovered, "including those associated with preparing a fee petition and resulting litigation." *Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 697 (D. Minn. 2012). And although the Defendants suggest that this case is akin to *Ricketson v. Advantage Collection Professionals, LLC*, that case involved more egregious conduct than what is at issue here. No. 21-cv-2541 (WMW/ECW), 2022 WL 3701442, at *5–7 (D. Minn. Aug. 26, 2022). In *Ricketson*, the plaintiff's counsel "repeatedly and obstinately" refused to provide information concerning fees incurred to defense counsel, misrepresented the nature of the fee dispute to the magistrate judge at an initial pretrial conference, and engaged in such other

vexatious litigation conduct that the district court found it appropriate to grant the defendant's motion for sanctions pursuant to 28 U.S.C. § 1927. *Id.* While it is true that Mr. Giebel initially declined to provide information to the Defendants regarding his billed time, he did not *repeatedly* and *obstinately* refuse to share the information with defense counsel. Indeed, he provided it within a few days of the Defendants' request, albeit after some back-and-forth between counsel and after the Defendants provided him with authority supporting their request. While the Court agrees that some of the post-Rule 68-acceptance hours claimed by Mr. Giebel were not reasonably expended, that finding is not a determination that Mr. Giebel acted in bad faith.

Nonetheless, the Court finds that awarding all of the claimed post-Rule 68 time would be unreasonable under the circumstances. The full extent of the hours claimed are excessive and do not reflect attorney time that was reasonably and efficiently spent. For example, on April 13th, two days after the Defendants sent their Rule 68 Offer to Mr. Giebel, he communicated a demand for $20,000. Of course, that figure included at least 23 hours of Mr. Giebel's claimed time that the Court has already found was not reasonably expended in connection with this action because it related to the underlying Washington County matters, not this litigation. Seeking compensation for those hours as part of the fee dispute in this case was not a reasonable approach and was a major contributor to Mr. Giebel's opening salvo being a non-starter for any reasonable compromise of the fee dispute. When the Defendants eventually countered with a $6,000 offer on May 4th, later that day, Mr. Giebel *increased* the demand, stating that "Plaintiffs are now willing to accept from [Defendants] the sum of $21,915.00 in attorney fees

19

(calculated at the correct $450.00 per hour)" rate, and advising defense counsel that "we expect another approximate $5,000.00 - $7,000.00 will be incurred in . . . April and May. . . ." [Dkt. 27-1 at 84–94.] The parties met and conferred about the fee issue over the telephone on May 8th, but were unable to resolve the dispute. Their follow-up communications over the next few days did not result in the parties coming closer together. [Dkt. 27 ¶ 8; Dkt. 27-1 at 103–09.] Mr. Giebel's motion for fees and costs followed, including a request for nearly $29,000 in attorney's fees, a request that increased again after Mr. Giebel submitted his reply memorandum.

All told, the billing records show that Mr. Giebel expended 15.6 hours of time between the acceptance of the Rule 68 Offer and May 22, 2023, on such tasks as communicating with opposing counsel regarding the fee dispute and other issues and on researching, drafting, assembling, and preparing the motion and related filings. Subsequent billing records from June 2023 identify another 8.1 hours in connection with drafting letters to the Court, reviewing Court orders, conducting research for the reply, drafting the reply, and assembling the papers for filing. [Dkt. 30-1 at 21.] Having reviewed these portions of the billing records, the Court finds that a total of 10 of the 23.7 hours that are claimed were reasonably expended. This deduction excludes substantial time negotiating the fee dispute while unreasonably including significant fees that are not connected with this suit. In addition, the deduction excludes excessive hours spent on legal research and drafting of the memorandum and reply and in preparation of the submissions for filing. In particular, the Court notes that Mr. Giebel's opening brief and accompanying declaration spends several pages unnecessarily addressing the merits of

the underlying dispute. Similarly, his reply brief and second declaration address ancillary matters that are not relevant to the fee dispute, such as the timing of the defendants' payment of the $2,002.00 judgment to the Plaintiffs. The 10 hours that the Court has found reasonably compensable represents sufficient time for the parties to have attempted to reasonably negotiate the disagreement over fees and for Mr. Giebel to have prepared a properly focused memorandum and reply.

### *Conclusion*

All told, Mr. Giebel's billing records reflect 72.4 hours of claimed time. Combined, the Court has found that 37.9 of those hours should be deducted to reflect hours unreasonably included that were connected to the underlying garnishment and collections matters in state court (24.2 hours), and excessive time spent billing after the Plaintiffs' acceptance of the Rule 68 Offer (13.7 hours). Accordingly, the Court finds that a reasonable fee in this case is represented by the following lodestar calculation: 34.5 hours multiplied by $350 per hour, for a total of $12,075.00 in reasonable attorney's fees.

Overall, the Court finds the deductions discussed above in the reasonable hourly rate and the hours reasonably expended are appropriate in light of the nature of the suit and the effort required to bring it to a favorable conclusion for the Plaintiffs. Significant to this conclusion is the fact that this case does not present a situation in which the Defendants heavily litigated the merits of the FDCPA claims or the unlawful garnishment claims, thereby causing the Plaintiffs to incur fees at an amount close to what was sought in the fee petition. Consequently, this case differs from others involving substantial fee awards where defendants, after heavily litigating the case, later oppose the plaintiff's fee

petition by complaining that the plaintiff's counsel spent too much time responding to their vigorous defense. *See Wiley*, 594 F. Supp. 3d at 1148–49 (noting that although the defendant was free to "fiercely contest Plaintiffs' claims," its conduct caused the plaintiffs to incur increased fees). Rather, in this case, within a relatively short period after the complaint was served and Defendants filed their answers, CSIC and Muskie assessed the issues in the litigation, considered their potential exposure, and weighed the risks of a more substantial judgment in attorney's fees should they continue to litigate the merits. Having done so, they made a prompt offer of judgment, which the Plaintiffs accepted. Therefore, the Defendants' strategy here did not cause substantial litigation. To the contrary, their approach wrapped the case up swiftly and economically, and the record does not support the nearly $30,000 in fees sought by the Plaintiffs' counsel.

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion For Attorney Fees And Costs [Dkt. 19] is granted in part. The Defendants shall pay a total of $12,239.00 in reasonable attorney's fees ($12,075.00) and costs ($164.00).


Date: January 22, 2024                                   *s/Katherine Menendez*
                                                         Katherine Menendez
                                                         United States District Judge

22